1   BRENT J. NEWELL (State Bar No. 210312)
    LAW OFFICES OF BRENT J. NEWELL
2   245 Kentucky Street, Suite A-4
    Petaluma, CA 94952
3   Tel: (661) 586-3724
    brentjnewell@outlook.com
4
    Attorney for Plaintiff
5   Association of Irritated Residents

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                          OAKLAND DIVISION

11

12  ASSOCIATION OF IRRITATED            )   Case No. 4:18-cv-01604-YGR
    RESIDENTS, a nonprofit corporation, )
13                                       )   Date:  July 31, 2018
                                         )   Time: 2:00 pm
14          Plaintiff,                   )
                                         )   **PLAINTIFF'S NOTICE OF MOTION AND**
15      v.                               )   **MOTION FOR SUMMARY JUDGMENT**
                                         )
16  UNITED STATES ENVIRONMENTAL         )
    PROTECTION AGENCY, SCOTT PRUITT, in )
17  his official capacity as Administrator of the )
    United States Environmental Protection )
18  Agency, and ALEXIS STRAUSS, in her )
    official capacity as Acting Regional )
19  Administrator for Region 9 of the United States )
    Environmental Protection Agency,     )
20                                       )
            Defendants.                  )
21  _____ )

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2   TABLE OF AUTHORITIES……………………………………………………………………..ii

3   NOTICE OF MOTION………………………………………………………………………….1

4   MOTION FOR SUMMARY JUDGMENT……………………………………………………..1

5   MEMORANDUM OF POINTS AND AUTHORITIES………………………………………...1

6   INTRODUCTION………………………………………………………………………………1

7   STATEMENT OF ISSUES…………………………………………………………………….2

8   LEGAL FRAMEWORK……………………………………………………………………….2

9   STATEMENT OF FACTS………….....………………………………………………………3

10  JURISDICTION AND STANDING…………………………………………………….....6

11  ARGUMENT………………………………………………………………………………..10

12     I.  LEGAL STANDARD………………………………………………………………10

13
       II. EPA VIOLATED THE CLEAN AIR ACT WHEN IT FAILED TO ACT ON THE
14         2016 OZONE PLAN……………………….………………………………………11

15
       III. THE COURT SHOULD DECLARE EPA VIOLATED THE CLEAN AIR ACT AND ORDER
16         EPA TO ACT ON THE 2016 OZONE PLAN NO LATER THAN
           DECEMBER 19, 2018……………………………………………………………..12
17
    CONCLUSION…………………………………………………………………………….14
18
    CERTIFICATE OF SERVICE………………………………………………………………..15
19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

3  **Cases**

4  *Abramowitz v. EPA*, 832 F.2d 1071 (9th Cir. 1987)………..…………………………………..8

5  *Association of Irritated Residents v. United States Environmental Protection Agency*,

6      No. 08-00227-SC (N.D. Cal., Jan. 14, 2008) ……………………………..……………4

7  *Association of Irritated Residents v. EPA*, 790 F.3d 934 (9th Cir. 2015) ………………………...……7

8  *Bayview Hunters Point Community Advocates v. Metropolitan Transp. Comm'n*, 366 F.3d 692

9      (9th Cir. 2004) ……………………………………………………………………….3, 9

10  *Bernhardt v. County of Los Angeles*, 279 F.3d 862 (9th Cir. 2002) …………………………...…………9

11  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) …………………………………………………..……..10

12  *Committee for a Better Arvin v. EPA*, 786 F.3d 1169 (9th Cir. 2015) …………………………2, 5, 7, 9

13  *Delaney v. EPA,* 898 F.2d 687 (9th Cir. 1990) …………………………………...…………8, 11, 13

14  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2000) …………………..…7

15  *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977) ……..……………….7

16  *In re Ozone Designation Litigation*, 2018 WL 1258209 (N.D. Cal. March 12, 2018) ……………..10, 11

17  *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) …………………………………………….…..7, 8

18  *NRDC v. EPA*, 507 F.2d 905 (9th Cir. 1974) …………………………………………………..…………7

19  *NRDC v. Train*, 510 F.2d 692, 705 (D.C. Cir. 1974) ……………………………………………11

20  *Ober v. EPA*, 84 F.3d 304 (9th Cir. 1996) ………………………………………………………....8

21  *Safe Air for Everyone v. EPA*, 488 F.3d 1088 (9th Cir. 2007) ……………………………………3, 9

22  *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220 (9th Cir. 2008) …………......9, 10

23  *Sierra Club v. EPA*, 671 F.3d 955 (9th Cir. 2012). ………………………………………..……4, 7, 9

24  *Sierra Club v. Johnson*, No. 10-01954-CRB (N.D. Cal., May 6, 2010) ………………………………5

25  *Sierra Club v. McCarthy*, 2016 WL 1055120 (N.D. Cal. March 15, 2016) …………………..10, 11

26  *Sierra Club v. Morton*, 405 U.S. 727 (1972) ……………………………………………...……8

27  *Union Elec. Co. v. EPA*, 427 U.S. 246 (1976) ……………………………………………………2

28  *U.S. v. SCRAP*, 412 U.S. 669 (1973) ………………………………………………..…………8

1  *United States v. Oakland Cannabis Buyers' Co-Op.*, 532 U.S. 483 (2001) …………………….………13

2  *Vigil v. Leavitt*, 366 F.3d 1025 (9th Cir. 2004) ……………………………...…………………………2

3  *Warth v. Seldin,* 422 U.S. 490 (1975) …………………………………………………………………8

4

5  **Statutes**

6  42 U.S.C. § 7407(d)(1) …………………………………………...………………2

7  42 U.S.C. § 7409…………………………………………………………………………………2

8  42 U.S.C. § 7410(c) ……………………………………………………………...…3, 9

9  42 U.S.C. § 7410(k)(1)(B) ……………………………………………………….……3

10  42 U.S.C. § 7410(k)(1)(C) ……………………………………………………………3

11  42 U.S.C. § 7410(k)(2) ………………………………………………...………………...passim

12  42 U.S.C. § 7410(k)(3)………………………………………………………...…………3, 9

13  42 U.S.S. § 7502(c)………………………………………………………………2, 12

14  42 U.S.C. § 7509(a) ………………………………...…………………………………3, 9

15  42 U.S.C. § 7509(b) ……………………………………………...…………………………3, 9

16  42 U.S.C. § 7511(a)(1) ………………………………………………...………………4

17  42 U.S.C. § 7511(a)(5) …………………………………………………………….....4

18  42 U.S.C. § 7511(b)(2) ……………………………...……………………………………4

19  42 U.S.C. § 7511(b)(3) …………………………………………………………………4

20  42 U.S.C. § 7511a(a) …………………………………………………………..2, 12

21  42 U.S.C. § 7511a(b) …………………………………………………….……..2, 12

22  42 U.S.C. § 7511a(c) ……………………………………………...………..2, 8, 12

23  42 U.S.C. § 7511a(d) …………………………………………………………..2, 8, 12

24  42 U.S.C. § 7511a(e) …………………………………………………………..2, 8, 12

25  42 U.S.C. § 7604(a)(2) ………………………………………………...……..1, 6

26  42 U.S.C. § 7604(a) ……………………………………………………………..…3

27

28

1

**Regulations**

2    40 C.F.R. § 51.1103(a) ………………………………………………………………6

3    40 C.F.R. § 51.1103(d) …………………………………………………………...…6

4    40 C.F.R. § 54.2(d) ……………………………………………………………….…6

5

**Federal Rules of Civil Procedure**

7    Fed. R. Civ. P. 56(a) …………………………………………………………..……10

8    Fed. R. Civ. P. 56(c)(1)(A) …………………………………………………..……10

9

**Federal Register Notices**

11    62 Fed. Reg. 38856 (July 18, 1997) …………………………………………….....4

12    66 Fed. Reg. 56476 (Nov. 8, 2001) …………………………………………….…4

13    69 Fed. Reg. 20550 (Apr. 16, 2004) …………………………………………….…4

14    69 Fed. Reg. 23858 (April 30, 2004) …………………………………………….…5

15    73 Fed. Reg. 16436 (March 27, 2008) …………………….…………………3, 5, 13

16    74 Fed. Reg. 43654 (Aug. 27, 2009) …………………………..…………………5

17    75 Fed. Reg. 10420 (Mar. 8, 2010) …………………………………………….…4

18    77 Fed. Reg. 12652 (March 1, 2012) …………………………………………….…5

19    80 Fed. Reg. 12264 (March 6, 2015) …………………………………………....…6

20    81 Fed. Reg. 19492 (April 5, 2016)………………………………………....………4

21    81 Fed. Reg. 46608 (July 18, 2016) …………………………………………….…4

22

23

24

25

26

27

28

**NOTICE OF MOTION**

PLEASE TAKE NOTICE THAT on July 31, 2018 at 2:00 pm before the Honorable Yvonne Gonzalez Rogers, U.S. District Court Judge, in the Oakland Courthouse, 1301 Clay Street, Oakland, California, Courtroom 1, 4th Floor, Plaintiff Association of Irritated Residents ("AIR") will and hereby does move for summary judgment pursuant to Federal Rule of Civil Procedure 56 and Civil L.R. 56-1. This motion is based on the argument set forth below, the attached declarations and exhibits, the record in this action, and oral argument that may be presented at the hearing on this motion.

**MOTION FOR SUMMARY JUDGMENT**

The San Joaquin Valley in California has some of the worst air quality in the United States, including harmful ozone pollution – also known as smog – during the summer.  Defendants United States Environmental Protection Agency, Scott Pruitt, and Alexis Strauss (collectively "EPA") have a mandatory duty under the Clean Air Act to act on the San Joaquin Valley Air Pollution Control District's 2016 Plan for the 2008 8-Hour Ozone Standard ("2016 Ozone Plan") no later than December 19, 2017.  EPA has admitted that it failed to act by the deadline.  There is no genuine issue of material fact, and AIR is entitled to summary judgment on the question of liability.  AIR respectfully requests that the Court declare that EPA's failure to act on the 2016 Ozone Plan constitutes an unlawful failure to perform a non-discretionary duty under the Clean Air Act, 42 U.S.C. § 7604(a)(2).  AIR further requests that the Court issue an injunction requiring EPA to take final action on the Plan no later than December 19, 2018.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

After the EPA sets a health-based standard for an air pollutant, states must develop a plan containing the control strategy and demonstrate the plan will attain the standard by the deadline.  Congress assigned EPA the role of regulatory backstop in the Clean Air Act's system of cooperative federalism to ensure that state plans meet the Act's requirements.  If EPA finds that a plan falls short, then EPA must compel compliance.  This system breaks down when EPA fails to act, preventing citizen enforcement of the plan and delaying corrections to potentially inadequate plans.

In 2008, the EPA revised the standard for ozone and, in 2016, the state of California submitted the 2016 Ozone Plan to the EPA for its review and approval.   The EPA, as it has done with prior ozone plans

1   for the Valley, failed to perform its duty by the date Congress specified.  In a letter to the Court dated April
2   11, 2018, EPA admitted that it has failed to perform its duty.  This Court should order prompt EPA action
3   to ensure that the 2016 Ozone Plan will achieve its objective and will protect public health.

4   ## STATEMENT OF ISSUES

5       1.       Has EPA failed to act on the 2016 Ozone Plan by December 19, 2017 – within twelve
6   months of finding the Plan complete – as required by section 110(k)(2) of the Clean Air Act, 42 U.S.C.
7   § 7410(k)(2)?

8       2.       By when must EPA take final action on the 2016 Ozone Plan to perform that overdue
9   mandatory duty?

10  ## LEGAL FRAMEWORK

11      The Clean Air Act is "a drastic remedy to what was perceived as a serious and otherwise
12  uncheckable problem of air pollution."  *Union Elec. Co. v. EPA*, 427 U.S. 246, 256 (1976).  To achieve
13  this objective, the Act "sets forth a cooperative state-federal scheme for improving the nation's air
14  quality."  *Vigil v. Leavitt*, 366 F.3d 1025, 1029 (9th Cir. 2004).  Under the Act's model of cooperative
15  federalism, the Act directs EPA to promulgate National Ambient Air Quality Standards ("standards" or
16  "NAAQS") to limit the amount of harmful air pollutants in order "to protect public health" with "an
17  adequate margin of safety."  42 U.S.C. § 7409; *Vigil*, 366 F.3d at 1029.  EPA designates areas that fail to
18  meet the standards as "nonattainment."  42 U.S.C. § 7407(d)(1).

19      The Act "requires states to address nonattainment areas by developing a [State Implementation
20  Plan] that lays out a plan for how a nonattainment area will eventually comply with the NAAQS."
21  *Committee for a Better Arvin v. EPA*, 786 F.3d 1169, 1174 (9th Cir. 2015) (citing 42 U.S.C. §§ 7407(a),
22  7410).  The nonattainment area plan must contain several elements including, but not limited to, an
23  emissions inventory, control measures, reasonable further progress demonstration, and contingency
24  measures.  *See* 42 U.S.C. § 7502(c).  The Act imposes additional specific requirements on areas
25  designated nonattainment for ozone.  *See* 42 U.S.C. § 7511a(a)-(e).  "After public notice and hearings, a
26  state must adopt the [State Implementation Plan] and submit it to EPA for review and approval."
27  *Committee for a Better Arvin*, 786 F.3d at 1174 (citing 42 U.S.C. § 7410(a)).

28      Within 60 days of EPA's receipt of a proposed State Implementation Plan ("SIP") or SIP

revision, the Clean Air Act requires EPA to determine whether the submission is sufficient to meet the minimum criteria established by EPA for such proposals.  42 U.S.C. § 7410(k)(1)(B).  If EPA fails to make this "completeness" finding, the proposed SIP or SIP revision becomes complete by operation of law six months after a state submits the revision.  *Id.*   If EPA determines that the proposed SIP or SIP revision does not meet the minimum criteria, the state is considered to have not made the submission.  42 U.S.C. § 7410(k)(1)(C).   Within twelve months of an EPA finding that a proposed SIP or SIP revision is complete (or deemed complete by operation of law), EPA must act to approve, disapprove, or approve in part and disapprove in part, the submission.  42 U.S.C. §§ 7410(k)(2), (k)(3).

If EPA disapproves the SIP or SIP revision, in whole or in part, then the Clean Air Act requires EPA to impose sanctions against the offending state or region, including increased offsets for new and modified major stationary sources or a prohibition on the use of federal highway funds, unless the state submits corrections within 18 months.  42 U.S.C. §§ 7509(a), (b).  EPA must impose both offsets and highway funding sanctions within 24 months unless the state has corrected the deficiency.  *Id.* Moreover, the Act requires EPA to promulgate a Federal Implementation Plan within 24 months of disapproval unless the state corrects the deficiency and EPA approves the revision.  42 U.S.C. § 7410(c).

Once an adequate SIP is approved by EPA, it has the force and effect of federal law.  *Safe Air for Everyone v. EPA*, 488 F.3d 1088, 1091 (9th Cir. 2007) ("*Safe Air*").   Approved SIPs are enforceable in federal court by citizens under section 304(a) of the Clean Air Act, 42 U.S.C. § 7604(a).  *Bayview Hunters Point Community Advocates v. Metropolitan Transp. Comm'n*, 366 F.3d 692, 695 (9th Cir. 2004).  An EPA-approved SIP is federal law and does not change unless and until EPA approves a SIP revision requested by a state.  *Safe Air*, 488 F.3d at 1097.

## STATEMENT OF FACTS

Biogenic and anthropogenic emissions of nitrogen oxides (NOx) and volatile organic compounds (VOC) form ground-level ozone, the concentration of which is "directly affected by temperature, solar radiation, wind speed and other meteorological factors."  73 Fed. Reg. 16436, 16437 (March 27, 2008). Ozone causes respiratory inflammation, increased hospital admissions for respiratory illness, decreased lung function, enhanced respiratory symptoms for people with asthma, increased school absenteeism, and premature mortality.  73 Fed. Reg. at 16440.

1    As is the case with the 2016 Ozone Plan, EPA failed to act on ozone attainment plans for the 1-

2    hour ozone standard and the 1997 8-hour ozone standard within the time required by Congress.

3    **1-Hour Ozone Standard**

4        In 2001, EPA determined that the Valley did not attain the 1–hour ozone standard by the 1999

5    deadline.  66 Fed. Reg. 56476 (Nov. 8, 2001).  EPA automatically reclassified the Valley as a "severe"

6    nonattainment area, set May 31, 2002 as the deadline by which the State had to submit appropriate

7    revisions to the SIP, and set November 15, 2005 as the Valley's new attainment deadline.  *Id.* at 56481;

8    *see also* 42 U.S.C. §§ 7511(a)(1), (b)(2).  To obtain an additional five years to attain the standard, the

9    State requested that EPA reclassify the Valley as "extreme" with a November 15, 2010 attainment

10   deadline.  69 Fed. Reg. 20550 (Apr. 16, 2004); *see also* 42 U.S.C. § 7511(b)(3).

11       EPA failed to act on SIP revisions California submitted to meet the new deadline within the 12-

12   month period allowed in 42 U.S.C. § 7410(k)(2) and AIR filed suit to compel EPA action.  *See*

13   *Association of Irritated Residents v. United States Environmental Protection Agency*, No. 08-00227-SC

14   (N.D. Cal., Jan. 14, 2008).  Pursuant to a Consent Decree, EPA took final action in 2010.  75 Fed. Reg.

15   10420 (Mar. 8, 2010).  Plaintiff AIR and other groups subsequently sought judicial review and the Ninth

16   Circuit Court of Appeals held that EPA did not consider and address the implications of new emissions

17   data on whether the plan would attain the standard by the deadline.  *Sierra Club v. EPA*, 671 F.3d 955,

18   957-958, 968 (9th Cir. 2012).[1]

19       The San Joaquin Valley attained the standard in 2016, six years after the deadline.  81 Fed. Reg.

20   46608 (July 18, 2016).

21   **1997 8-hour Ozone Standard**

22       On July 18, 1997, EPA promulgated a revised ozone standard of 0.08 ppm, measured over an

23   8-hour period.  62 Fed. Reg. 38856 (July 18, 1997).  Effective June 15, 2004, EPA designated the San

24

25   _____

     [1] To correct the deficiencies in the 1-hour ozone attainment plan after the *Sierra Club* decision,

26   the San Joaquin Valley Air Pollution Control District revised the attainment plan in 2013, which the Air
     Resources Board submitted to EPA on December 20, 2013.  81 Fed. Reg. 19492 (April 5, 2016).  EPA
     approved the plan approximately two years and four months after submission.  *Id*.  This approval

27   exceeded the maximum time by which EPA should have taken final action – a maximum of eighteen
     months – by ten months.  42 U.S.C. §§ 7410(k)(1) (six months to find a SIP or SIP revision complete);

28   7410(k)(2) (twelve months to act on a SIP or SIP revision).

Joaquin Valley air basin as a serious nonattainment area for the 1997 8-hour ozone standard. 69 Fed. Reg. 23858 (April 30, 2004). EPA granted the California Air Resources Board's request to reclassify the Valley as an extreme ozone nonattainment area, extending the attainment deadline for the 1997 8-hour ozone standard to June 15, 2024. 74 Fed. Reg. 43654 (Aug. 27, 2009). On April 30, 2007, the San Joaquin Valley Air Pollution Control District adopted the 2007 Ozone Plan. 77 Fed. Reg. 12652 (March 1, 2012). The California Air Resources Board adopted its portion of the attainment strategy and submitted the 2007 Ozone Plan and several additional revisions to EPA between 2007 and 2011. *Id.*

After EPA failed to act within the 12-month period required by 42 U.S.C. § 7410(k)(2), the Sierra Club and Medical Advocates for Healthy Air filed suit to compel EPA action. *See Sierra Club v. Johnson*, No. 10-01954-CRB (N.D. Cal., May 6, 2010). Pursuant to a Consent Decree, EPA took final action on the 2007 Ozone Plan in 2012. 77 Fed. Reg. at 12652. Plaintiff AIR and other groups thereafter sought judicial review. The Ninth Circuit Court of Appeals held that EPA had improperly approved the plan when mobile source rules upon which the plan relied for emissions reductions in the attainment demonstration had not been approved by EPA as part of the State Implementation Plan. *Committee for a Better Arvin v. EPA*, 786 F.3d at 1177.

**2008 8-hour Ozone Standard**

In 2008, EPA completed a review of the 8-hour ozone standard and found it necessary to lower the 8-hour ozone standard from 0.08 to 0.075 parts per million. 73 Fed. Reg. 16436 (March. 27, 2008). The EPA based this decision on its findings that "(1) the strong body of clinical evidence in healthy people at exposure levels of 0.080 and above of lung function decrements, respiratory symptoms, pulmonary inflammation, and other medically significant airway responses, as well as some indication of lung function decrements and respiratory symptoms at lower levels; (2) the substantial body of clinical and epidemiological evidence indicating that people with asthma are likely to experience larger and more serious effects than healthy people; and (3) the body of epidemiological evidence indicating associations are observed for a wide range of serious health effects, including respiratory emergency department visits, hospital admissions, and premature mortality, at and below 0.080 ppm." 73 Fed. Reg. at 16476.

EPA designated the San Joaquin Valley as an extreme nonattainment area for the 2008 Standard.

1   40 C.F.R. § 51.1103(d).  As an extreme nonattainment area, the Valley has until July 20, 2032 – the

2   maximum allowable time – to attain the standard.  40 C.F.R. § 51.1103(a); 80 Fed. Reg. 12264, 12268

3   (March 6, 2015).

4        On June 16, 2016, the San Joaquin Valley Air Pollution Control District adopted the 2016 Plan

5   for the 2008 8-hour Ozone Standard ("2016 Ozone Plan").  Plaintiff's Supporting Separate Statement of

6   Uncontested Facts, Issue 1, Fact 1, ("Supporting Separate Statement").

7        On July 21, 2016, the California Air Resources Board approved the 2016 Ozone Plan as a

8   revision to the California State Implementation Plan.  Supporting Separate Statement, Issue 1, Fact 2.

9        On August 24, 2016, the California Air Resources Board submitted the 2016 Ozone Plan to the

10  EPA for review and approval as a SIP revision.  Supporting Separate Statement, Issue 1, Fact 3.

11       On December 19, 2016, EPA found the 2016 Ozone Plan complete.  Supporting Separate

12  Statement, Issue 1, Fact 4.

13                          **JURISDICTION AND STANDING**

14       This Court has jurisdiction under the Clean Air Act's citizen suit provision, which authorizes

15  district courts to hear actions brought by "any person" to compel EPA to perform "any act or duty"

16  under the Act "which is not discretionary with the [EPA]."  42 U.S.C. § 7604(a)(2).  EPA's failure to act

17  on the 2016 Ozone Plan within 12 months of finding the Plan complete as required by 42 U.S.C. §

18  7410(k)(2) is a failure to perform an act that is not discretionary.

19       AIR has satisfied the notice requirements to bring this action.  AIR provided notice on January

20  12, 2018 and filed this action on March 14, 2018.  Declaration of Brent Newell ¶ 7 and Exh. 5.  Because

21  more than 60 days elapsed after mailing the notice before AIR filed this action, 40 C.F.R. § 54.2(d), AIR

22  has satisfied the notice requirement.

23       AIR has standing to bring this action.  AIR members currently reside, work, recreate, and raise

24  their families in the San Joaquin Valley, which EPA has designated as an extreme ozone nonattainment

25  area.  *See* Declaration of Tom Frantz ("Frantz Decl.") ¶¶ 5, 6, 9; Declaration of Michael Wells ("Wells

26  Decl.") ¶¶ 3-5.  AIR's members are harmed by current levels of ozone pollution, and will continue to be

27  harmed, because EPA's non-discretionary duty to timely act on the Plan is part of the regulatory system

28  Congress created to ensure areas like the San Joaquin Valley meet the National Ambient Air Quality

1   Standards by the attainment deadline.

2       An organization has standing to bring an action on behalf of its members if (1) neither the claim

3   asserted, nor the relief requested requires its members to participate directly in the lawsuit; (2) the

4   organization is seeking to protect interests that are germane to its purpose; and (3) its members would

5   have standing to sue individually. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S.

6   333, 343 (1977). Here, direct participation of AIR's members is unnecessary. The interests AIR seeks

7   to protect falls squarely within its mission. *See* Frantz Decl. ¶¶ 3-4, 12-13. AIR's members also have

8   standing to bring this suit individually. To satisfy the final prong, each petitioner must show that (1) at

9   least one of its members has suffered an "injury in fact;" (2) the injury is fairly traceable to EPA's illegal

10  action; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a

11  favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81

12  (2000).

13  **AIR Members Have Suffered, and will Continue to Suffer, Injury in Fact.**

14      The first test for determining AIR's stake is that "the [party] must have suffered an 'injury in

15  fact' – an invasion of a legally-protected interest which is (a) concrete and particularized . . . and (b)

16  "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defenders of Wildlife,* 504 U.S. 555,

17  560 (1992). The Clean Air Act creates the legally protected interest in having air pollution reduced to

18  comply with clean air standards. The expansive case law in the Ninth Circuit supports the conclusion

19  that the evidence of exposures exceeding the ozone standard demonstrates that AIR members suffer

20  "concrete," "particularized" and "imminent" injuries when air pollution violates clean air standards.

21  AIR has standing because its members "will suffer injury if compelled to breathe air less pure than that

22  mandated by the Clean Air Act." *NRDC v. EPA*, 507 F.2d 905, 910 (9th Cir. 1974) (citations omitted);

23  *see also Association of Irritated Residents v. EPA*, 790 F.3d 934, 940 n.4 (9th Cir. 2015) (holding AIR

24  members had standing to challenge an EPA action allowing an increase in emissions of VOC, an ozone

25  precursor, in the San Joaquin Valley). Injury in fact from air pollution has been so obvious that courts

26  routinely proceed to the merits without a standing discussion. *See, e.g.*, *Sierra Club*, 671 F.3d at 968

27  (petition for review challenging EPA action on 2004 1-hour ozone nonattainment plan); *Committee for a*

28  *Better Arvin*, 786 F.3d at 1177 (petition for review challenging EPA action on 2007 8-hour ozone

1  nonattainment plan); *Ober v. EPA*, 84 F.3d 304, 307 (9th Cir. 1996); *Delaney v. EPA,* 898 F.2d 687 (9th

2  Cir. 1990), *cert. denied*, 498 U.S. 998 (1990); *Abramowitz v. EPA*, 832 F.2d 1071 (9th Cir. 1987).

3      The factual predicate for injury here is identical since AIR's members are compelled to breathe

4  levels of ozone which exceed the standards promulgated to protect public health.  AIR members aver

5  that when they breathe the air on high pollution days it causes them various concrete and tangible forms

6  of physical injury and discomfort.  Frantz Decl. ¶¶ 7-9; Wells Decl. ¶¶ 5-7.  AIR members curtail

7  physical exercise and outdoor activities due to high pollution concentrations, lessening their quality of

8  life and impairing recreational opportunities.  Frantz Decl. ¶ 9; Wells Decl. ¶ 7.  AIR members are

9  concerned by the ozone they and their families see and are physically and aesthetically harmed by ozone

10 on a regular basis.  Frantz Decl. ¶¶ 7, 10; Wells Decl. ¶¶ 5, 8.

11     AIR members' injuries are also "particularized."  *Lujan,* 504 U.S. at 560, n.1 ("particularized"

12 means that "the injury must affect the plaintiff in a personal and individual way").  Each of AIR's

13 members experience a unique, personal harm from exposure to ozone.  *See* Frantz Decl. ¶¶ 7-10; Wells

14 Decl. ¶¶ 5-8.  The fact that the injury caused by air pollution may be shared by millions of other people

15 in the San Joaquin Valley does not deprive each injured person of a particularized injury.  *See Sierra*

16 *Club v. Morton*, 405 U.S. 727, 734 (1972) ("The fact that particular environmental interests are shared

17 by the many rather than the few does not make them less deserving of legal protection through the

18 judicial process."); *U.S. v. SCRAP*, 412 U.S. 669, 687 (1973) ("Standing is not to be denied simply

19 because many people suffer the same injury."); *accord Warth v. Seldin,* 422 U.S. 490, 501 (1975).

20     EPA's failure to act also causes procedural injury to AIR and its members.  "To establish a

21 procedural 'injury in fact, [a plaintiff] must allege ... that (1) the [agency] violated certain procedural

22 rules; (2) these rules protect [a plaintiff's] concrete interests; and (3) it is reasonably probable that the

23 challenged action will threaten their concrete interests.'" *San Luis & Delta-Mendota Water Auth. v.*

24 *Haugrud*, 848 F.3d 1216, 1232 (9th Cir. 2017).

25     Congress designed the Act's procedures for EPA action by a fixed deadline to protect AIR's

26 members' concrete interest in breathing clean air.  The 2016 Ozone Plan should include emission

27 reduction requirements and should demonstrate attainment of the standard by the deadline.  42 U.S.C. §

28 7511a(c), (d), (e) (extreme area plan includes requirements applicable to serious and severe areas,

1 | including attainment demonstration).  Congress commanded EPA, as a regulatory backstop, to act within

2 | a finite period to approve or disapprove the 2016 Ozone Plan, and EPA failed to do so.  42 U.S.C. §

3 | 7410(k)(2), (k)(3).

4 |       This regulatory backstop procedure protects AIR's interest in healthy air and the timely

5 | attainment of the 2008 8-hour ozone standard.  Upon EPA approval, the Plan becomes enforceable as a

6 | matter of federal law which allows AIR to protect its interests through citizen suit enforcement actions.

7 | *Safe Air*, 488 F.3d at 1091; *Bayview*, 366 F.3d at 695; Frantz Decl. ¶ 12.  Upon EPA disapproval,

8 | Congress requires EPA to compel states to correct deficiencies under threat of mandatory sanctions,

9 | including an EPA-promulgated Federal Implementation Plan.  42 U.S.C. §§ 7509(a), (b); 7410(c).

10 | EPA's failure to act threatens AIR's interest because AIR cannot enforce the 2016 Ozone Plan until

11 | EPA approves the Plan.  Moreover, until EPA disapproves the Plan and triggers sanctions, California

12 | will have no notice of, or incentive to, correct any deficiencies.  EPA's failure to act therefore inflicts a

13 | procedural injury that harms AIR's concrete interest in healthy air and timely attainment.  *See Salmon*

14 | *Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1225-1226, 1229 (9th Cir. 2008)

15 | (environmental group had standing where agency violated procedural requirement designed to protect

16 | groups' concrete interests in welfare of endangered species).

17 |       Moreover, EPA's failure to act on the Plan delays AIR's right to receive notice of EPA's

18 | proposed action, provide comment, and challenge any final EPA action as inconsistent with the Clean

19 | Air Act.  In the past, EPA has approved plans notwithstanding substantial deficiencies, AIR has

20 | commented on those plans, and AIR has successful challenged those plans.  *See, e.g.*, *Committee for a*

21 | *Better Arvin*, 786 F.3d at 1177; *Sierra Club* 671 F.3d at 957-958, 968.  AIR intends to participate in the

22 | rulemaking process for the 2016 Ozone Plan and challenge an EPA action if necessary.  Frantz Decl. ¶

23 | 13.  EPA's on-going inaction thus threatens AIR's interest in commenting on the Plan and seeking

24 | judicial review to ensure timely attainment of the 2008 8-hour ozone standard.

25 | **AIR Members' Harms are Fairly Traceable to EPA's Inaction.**

26 |       The causation test requires that "the injury is fairly traceable to the challenged action of the

27 | defendant." *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002) (quoting *Laidlaw*).

28 | AIR members' physical and aesthetic injuries from unhealthy levels of ozone are traceable to EPA's

1   failure to perform its duty.  EPA's failure to review the Plan for compliance with the Clean Air Act

2   exacerbates AIR members' injuries from ozone by not ensuring the Plan attains the 2008 8-hour ozone

3   standard on time.

4          AIR's burden to demonstrate causation and redressability for its procedural injuries is relaxed.

5   *Salmon Spawning*, 545 F.3d at 1229 (citing *Lujan*, 504 U.S. at 572, n.7).  AIR members' procedural

6   injuries occur as a direct result of EPA's failure to act.  Until EPA acts, AIR cannot comment on EPA's

7   proposed action, enforce an approved plan, benefit from Plan corrections compelled by EPA

8   disapproval, or seek judicial review.

9   **The Relief Sought will Redress AIR Members' Injuries.**

10          An order from this Court declaring that EPA violated its non-discretionary duty to act on the

11   Plan and an order compelling EPA to take final action by a specific date will redress AIR's injuries.

12   EPA action to ensure the 2016 Ozone Plan complies with the Clean Air Act will redress AIR members'

13   physical and aesthetic injuries by ensuring timely attainment of the standard.  EPA action will also

14   redress AIR's procedural injuries.  AIR will comment on an EPA action, enforce a proper Plan if

15   approved, or receive the benefits of deficiency corrections either through an EPA disapproval or as the

16   result of judicial review.  The relief sought will thus redress AIR's substantive and procedural injuries.

17                                          **ARGUMENT**

18   **I.  LEGAL STANDARD**

19          Under Federal Rule of Civil Procedure 56, summary judgment must be granted when, viewing

20   the facts in the light most favorable to the nonmoving party, the record shows that "there is no genuine

21   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

22   P. 56(a).  Once the moving party has satisfied this burden, it is entitled to summary judgment if the non-

23   moving party fails to cite "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v.*

24   *Catrett*, 477 U.S. 317, 324 (1986); *accord* Fed. R. Civ. P. 56(c)(1)(A).  When there is no dispute as to

25   EPA's failure to perform a non-discretionary duty, a motion for summary judgment is the appropriate

26   procedure for determining a remedy.  *Sierra Club v. McCarthy*, 2016 WL 1055120, at *2 (N.D. Cal.

27   March 15, 2016); *In re Ozone Designation Litigation*, 2018 WL 1258209, at *2 (N.D. Cal. March 12,

28   2018).

In ordering appropriate relief, a district court should compel EPA to correct its statutory violations as soon as possible. *NRDC v. Train*, 510 F.2d 692, 705, 712-713 (D.C. Cir. 1974). This Court "has 'broad latitude' to fashion an equitable remedy other than injunctive relief." *In re Ozone Designation Litigation*, 2018 WL 1258209, at *3 (N.D. Cal. March 12, 2018) (quoting *Alaska Ctr. for Env't v. Browner*, 20 F.3d 981, 986 (9th Cir. 1994)). "Defendants carry 'a heavy burden to show that compliance with statutory mandated deadlines is impossible or infeasible.'" *Id.* at *3 (quoting *Am. Lung Ass'n v. Browner*, 884 F.Supp. 345, 347 (D. Ariz. 1994)); *see Delaney v. EPA*, 898 F.2d 687, 691 (9th Cir. 1990) ("When Congress has explicitly set an absolute deadline, congressional intent is clear . . . The EPA cannot extract leeway from a statute that Congress explicitly intended to be strict."). "It is the Court's role to 'separate justifications grounded in the purposes of the [statute] from the footdragging efforts of a delinquent agency.'" *In re Ozone Designation Litigation*, 2018 WL 1258209 at *3 (quoting *Train*, 510 F.2d at 713).

If "Congress found that a certain amount of time was appropriate for the agency to complete its statutory duty in the first instance, that timeframe should generally still control." *Sierra Club v. McCarthy*, 2016 WL 1055120, at *3 (N.D. Cal. March 15, 2016) (citing *Sierra Club v. Thomas*, 658 F.Supp. 165, 171 (N.D.Cal.1987)). Courts should not demand a deadline that is impossible or infeasible. *Train*, 510 F.2d at 713. "To determine whether a deadline is infeasible, the Court should consider: (1) whether the 'budgetary' and 'manpower demands' required are 'beyond the agency's capacity or would unduly jeopardize the implementation of other essential programs'; and (2) an agency's need to have more time to sufficiently evaluate complex technical issues." *Sierra Club v. McCarthy*, 2016 WL 1055120, at *3 (quoting *Train*, 510 F.2d at 712–13).

## II. EPA VIOLATED THE CLEAN AIR ACT WHEN IT FAILED TO ACT ON THE 2016 OZONE PLAN.

EPA concedes that it has violated, and continues to violate, its duty under 42 U.S.C. 7410(k)(2) to act on the 2016 Ozone Plan within twelve months of finding the Plan complete. *See* Letter from Andrew Coghlan to Hon. Yvonne Gonzalez Rogers, dated April 11, 2018 (Dkt. 17) ("EPA has missed its statutory deadline to approve or disapprove, in whole or in part, the [2016 Ozone Plan]"); Supporting Separate Statement, Issue 1, Fact 5.

1   On June 16, 2016, the San Joaquin Valley Air Pollution Control District adopted the 2016 Ozone

2   Plan.  Supporting Separate Statement, Issue 1, Fact 1.

3   On July 21, 2016, the California Air Resources Board approved the 2016 Ozone Plan as a

4   revision to the California State Implementation Plan.  Supporting Separate Statement, Issue 1, Fact 2.

5   On August 24, 2016, the California Air Resources Board submitted the 2016 Ozone Plan to the

6   EPA.  Supporting Separate Statement, Issue 1, Fact 3.

7   EPA found the 2016 Ozone Plan complete on December 19, 2016.  Supporting Separate

8   Statement, Issue 1, Fact 4.    EPA's website page entitled "Status of SIP Required Elements for

9   California Designated Areas" states that the last action on the elements of the 2016 Ozone Plan

10  submitted on August 24, 2016 was the completeness finding on December 19, 2016.  *Id.*  The San

11  Joaquin Valley 2008 8-hour ozone section lists several required elements submitted on August 24, 2016,

12  including the clean fuels for boilers, clean fuels for fleets, contingency measures, contingency provisions

13  for Reasonable Further Progress (RFP) milestones, emissions inventory, emission statement,

14  inspection/monitoring (I/M) enhanced, ozone attainment demonstration, Reasonable Further Progress

15  (RFP) for NOx and VOC, and vehicle miles travelled (VMT) and transportation control measures

16  (TCM).  *Id.*  These elements track the Clean Air Act's requirements for extreme ozone nonattainment

17  area plans, including emissions inventory, attainment demonstration, and contingency measures.  *See* 42

18  U.S.C. §§ 7502(c) (requirements for all nonattainment areas); 7511a(a)-(e) (requirements for extreme

19  ozone nonattainment areas).

20  EPA has not acted on the 2016 Ozone Plan within twelve (12) months of finding the Plan

21  Complete, or by December 19, 2017.  *See* Supporting Separate Statement, Issue 1, Fact 5.  Accordingly,

22  EPA has violated, and continues to violate, the Clean Air Act and AIR is entitled to summary judgment.

23  **III. THE COURT SHOULD DECLARE EPA VIOLATED THE CLEAN AIR ACT AND
      ORDER EPA TO ACT ON THE 2016 OZONE PLAN NO LATER THAN
24    DECEMBER 19, 2018.**

25  AIR respectfully requests that the Court declare that EPA violated the Clean Air Act by failing to

26  act on the 2016 Ozone Plan as required by 42 U.S.C. § 7410(k)(2).  AIR further requests that the Court

27  order EPA to take final action on the Plan no later than December 19, 2018.  Because Congress has

28  specified precisely what EPA must do and EPA has not performed, this Court should issue an order

1    requiring EPA to complete its duty.  *See United States v. Oakland Cannabis Buyers' Co-Op.*, 532 U.S.

2    483, 497 (2001) ("Courts of equity cannot, in their discretion, reject the balance that Congress has struck

3    in a statute").  An agency's violation of a mandatory deadline should be corrected "as soon as possible."

4    *Delaney*, 898 F.2d at 691.

5         EPA cannot meet its heavy burden to demonstrate that action on the Plan by December 19, 2018

6    is impossible or infeasible.  Congress required EPA to review the 2016 Ozone Plan and provided *no*

7    exceptions to EPA's duty to act.  Congress granted EPA a finite period – twelve months – to perform its

8    regulatory oversight function under section 110(k)(2) of the Act, 42 U.S.C. § 7410(k)(2).  EPA will

9    likely ask for more time than the period sought by AIR, but EPA cannot deny that the agency should be

10   proceeding now to perform its statutory duty while this case is pending.  As of the date of this Motion,

11   EPA has had more than sixteen months to act since finding the Plan complete and has yet to even

12   propose action.

13        The Court should also consider the evidence of EPA's historical pattern of non-compliance when

14   acting on ozone nonattainment plans for the San Joaquin Valley.  EPA failed to timely act on plans to

15   meet the 1-hour and the 1997 8-hour ozone standards.  *See* Statement of Facts, *infra* at 4-5.  Failure to

16   timely act has, unfortunately, become the norm for EPA rather than the exception.  AIR members' – and

17   millions of Valley residents' – health and well-being are compromised when EPA continues to

18   undermine its essential role as a regulatory back-stop.

19        EPA itself has identified the significant health impacts associated with ozone and the need to

20   further reduce the 8-hour ozone standard from 0.08 to 0.075 parts per million.  *See* Statement of Facts at

21   5, *infra*.  This evidence unequivocally demonstrates the level of urgency that EPA should employ in its

22   oversight role, which has been absent to date.  Not only should EPA act with all deliberate speed, but

23   EPA should prioritize resources to review the Plan given the "extreme" severity of the ozone pollution

24   problem in the Valley, the region's failure to timely attain the 1-hour ozone standard, and court

25   decisions holding EPA has improperly approved prior plans.  *Id*. at 4-6.  An order requiring EPA action

26   by December 19, 2018 would give EPA two years since EPA found the Plan complete to review and act

27   on the Plan.  Given the urgency and importance of EPA's role in ensuring Valley residents breathe

28   healthier air, AIR's proposed timeline is reasonable.

1   **CONCLUSION**

2          For the foregoing reasons, the Court should grant this Motion, enter judgment in favor of AIR,

3   declare EPA violated the Clean Air Act, and order EPA to act on the 2016 Ozone Plan no later than

4   December 19, 2018.

5

6   Dated: April 26, 2018                         Respectfully Submitted,
                                                   LAW OFFICES OF BRENT J. NEWELL

7
                                                   /s/ Brent J. Newell
8                                                  Brent J. Newell
                                                   Attorney for Plaintiff
9                                                  Association of Irritated Residents

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that the foregoing was electronically filed with the Clerk of the Court

3   using the CM/ECF system on April 26, 2018, which will send notification of said filing to

4   the attorneys of record, who are required to have registered with the Court's CM/ECF system.

5

6                                          */s/ Brent Newell*
                                           Brent Newell
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28