JEFFREY H. WOOD
Acting Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice
ANDREW S. COGHLAN (CA Bar No. 313332)
Andrew.Coghlan@usdoj.gov
Environmental Defense Section
601 D Street N.W., Suite 8000
Washington D.C.  20004
Telephone (202) 514-9275
Facsimile (202) 514-8865

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASSOCIATION OF IRRITATED RESIDENTS,<br><br>            Plaintiff,<br><br>        v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>            Defendants. | Case No. 4:18-cv-01604-YGR<br><br>**DECLARATION OF ELIZABETH J. ADAMS IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND PARTIAL OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: July 31, 2018<br>Time: 2:00 p.m.<br>Courtroom: 1, 4th Floor |

I, Elizabeth J. Adams, declare under penalty of perjury under the laws of the United States of America that the following statements are true and correct to the best of my knowledge and belief and that they are based upon my personal knowledge, or on information contained in the records of the United States Environmental Protection Agency (EPA), or on information supplied to me by EPA employees.

1.      I am the Acting Director of the Air Division, Region 9, EPA. The EPA's Region 9 Office generally has the responsibility within the EPA for overseeing the implementation of the Clean Air Act ("CAA" or "the Act") in the Region 9 area. The EPA has delegated the authority under section 110 of the Act, 42 U.S.C. 7410, to approve or disapprove state implementation plan ("SIP") submissions, in whole or in part, to the regional administrators. Thus, the Regional Administrator of the EPA's Region 9 Office has the authority to approve or disapprove SIP submissions from the states in Region 9, including California.

2.      I have been the Acting Director of the Air Division of Region 9 since July 2015.[1] Previously, I served as the Deputy Director of the Air Division. I have also served in senior leadership positions in the Superfund Division of Region 9 and served as the Acting Director of the Assessment and Remediation Division in the EPA's Office of Land and Emergency Management.

3.      As Acting Director of the Air Division in Region 9, I oversee and have worked extensively with staff and management in the Region 9 Air Division, which is responsible for reviewing SIP submissions in Region 9 and drafting the rulemaking documents necessary to support EPA actions on submitted SIPs. Thus, I am knowledgeable about EPA Region 9's

---

[1] Except for a two-month period in 2016.

actions to date concerning the EPA's review of the SIP that is the subject of this litigation: *2016 Ozone Plan for 2008 8-Hour Ozone Standard*, San Joaquin Valley Unified Air Pollution Control District (June 16, 2016) [hereinafter, "the 2016 Ozone Plan"]. In addition, I am knowledgeable about both the internal and public processes necessary for the EPA to take action on the submitted SIP in a manner consistent with the applicable requirements of the CAA and the Administrative Procedure Act ("APA"). I am familiar with the amount of staffing necessary to complete this action, the time frames associated with this work and the total workload of the staff working on this action, as well as that of their supervisors, managers, and senior management staff. These responsibilities have made me knowledgeable about the requisite procedures and workloads associated with the EPA's review of and action on SIP submissions.

4.      This declaration is filed in support of the EPA's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment in the above-captioned proceeding. It is also filed specifically to support Defendants' request for a schedule providing for the EPA to take final action on most elements of the 2016 Ozone Plan by December 19, 2018, and providing an additional three months, until March 19, 2019, for the EPA to take final action on four specific elements of the 2016 Ozone Plan that are potentially affected by the Court of Appeals for the D.C. Circuit's February 16, 2018 decision in *South Coast Air Quality Management District v. EPA,* 882 F.3d 1138 (D.C. Cir. 2018) ("*South Coast*"). In the paragraphs below, I explain the EPA's general process for approving or disapproving submitted SIPs, the complications created in this particular situation by the *South Coast* decision, and the competing obligations of both our staff workgroup and our senior management team that impact our ability to act on the 2016 Ozone Plan.

## I.   LEGAL AND FACTUAL BACKGROUND

5.     The San Joaquin Valley area was designated nonattainment for the 2008 ozone National Ambient Air Quality Standards ("NAAQS") on July 20, 2012, and comprises the counties of Fresno, Kern (partial), Kings, Madera, Merced, San Joaquin, Stanislaus, and Tulare. The area is classified as Extreme nonattainment under CAA section 181, 42 U.S.C. 7511. 77 Fed. Reg. 30,088, at 30,092 (May 21, 2012) (effective July 20, 2012).

6.     Section 110(k)(1)(B) of the CAA requires the EPA to determine whether a submitted plan or plan revision meets certain minimum completeness criteria within 60 days of the EPA's receipt of the plan or revision, but no later than 6 months after the date, if any, by which a State is required to submit it. 42 U.S.C. 7410(k)(1)(B). If the EPA determines that a submitted plan or plan revision is complete, section 110(k)(2) of the Act provides that, within 12 months of such determination, the EPA must approve or disapprove the submission, in whole or in part, in accordance with CAA section 110(k)(3). 42 U.S.C. 7410(k)(2) and (3).

7.     Section 110(k)(3) of the CAA requires that the EPA approve a SIP submission as a whole if it meets all of the applicable requirements of the Act. If a portion of the SIP submission meets all the applicable requirements of the Act, the EPA may approve the submission in part and disapprove it in part. 42 U.S.C. 7410(k)(3); 40 C.F.R. 52.02(a).

8.     Section 110(k)(4) of the CAA allows the EPA to conditionally approve a SIP submission based on a commitment of the State to adopt specific enforceable measures by a date certain, but not later than 1 year after the date of approval of the SIP submission. 42 U.S.C. 7410(k)(4).

9.     The EPA's actions on SIPs under CAA section 110(k), 42 U.S.C. 7410(k), are "rulemakings" subject to notice-and-comment procedures under the APA. 5 U.S.C. 551, 553.

Section 553 of the APA requires that federal agencies provide general notice of proposed rulemaking actions, by publication in the Federal Register, and thereafter give interested persons an opportunity to participate in the rulemaking through submission of written data, views, or arguments with or without opportunity for oral presentation. 5 U.S.C. 553(b) and (c). This section of the APA also provides that, after consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose.  5 U.S.C. 553(c).

10.     The EPA's substantive review of the 2016 Ozone Plan is governed by the statutory provisions specific to ozone nonattainment areas in subpart 2 of part D, title I of the CAA, 42 U.S.C. 7511 – 7511f, the general nonattainment area provisions in CAA section 172, 42 U.S.C. 7502, to the extent that those provisions are not superseded by the ozone specific provisions, and the EPA's 2015 regulations for implementing the 2008 ozone NAAQS, 80 Fed. Reg. 12,264 (Mar. 6, 2015) (hereinafter "the Plan Requirements Rule") (codified at 40 C.F.R. part 51, subpart AA). The California Air Resources Board ("the Air Board") and the San Joaquin Valley Air Pollution Control District ("the San Joaquin Valley District" or "the District") relied upon the Plan Requirements Rule in developing and adopting the 2016 Ozone Plan to satisfy CAA requirements.

11.     On August 24, 2016, the Air Board submitted the 2016 Ozone Plan to the EPA as a revision to the California SIP. While the EPA has not yet taken action on the 2016 Ozone Plan, the EPA has taken action on other SIP revisions that address requirements for the San Joaquin Valley with respect to the 2008 ozone NAAQS or that contain control measures on which the 2016 Ozone Plan relies. For example, with respect to control measures, on June 16, 2016, the EPA approved regulations establishing new passenger car emissions standards (referred to as the

Low Emission Vehicle III ("LEV III") and zero-emission vehicle ("ZEV") regulations) that will

reduce motor vehicle-related emissions in the San Joaquin Valley over the 2012 to 2031 period

addressed by the 2016 Ozone Plan. 81 Fed. Reg. 39,424. The EPA has also proposed to approve

a SIP revision addressing the Reasonably Available Control Technology ("RACT") requirements

for the San Joaquin Valley for the 2008 ozone NAAQS. 83 Fed. Reg. 22,908 (May 17, 2018).[2]

      12.    On December 19, 2016, the EPA determined that the 2016 Ozone Plan met the

EPA's minimum completeness criteria for SIP submissions under the CAA. This determination

triggered the EPA's obligation to approve or disapprove the SIP submission, in whole or in part,

within 12 months under CAA section 110(k)(3), 42 U.S.C. 7410(k)(3), *i.e.*, by December 19,

2017.

      13.    On February 16, 2018, the Court of Appeals for the D.C. Circuit issued its

decision in *South Coast*, granting in part and denying in part challenges to the Plan Requirements

Rule and vacating nine specific portions of the rule. 882 F.3d 1138 (D.C. Cir. 2018). Of

pertinence to the EPA's action on the 2016 Ozone Plan, the court vacated that portion of the Plan

Requirements Rule that allowed states to use, with appropriate justification, a "baseline

emissions inventory" for an alternative year between 2008 and 2012 *in lieu of* the 2011 baseline

emissions inventory otherwise required for purposes of satisfying the Reasonable Further

Progress ("RFP") requirements in CAA sections 172(c)(2), 182(b)(1) and 182(c)(2)(B), 42

U.S.C. 7502(c)(2), 7511a(b)(1) and 7511a(c)(2)(B). 882 F.3d at 1152, 1153 (vacating Plan

Requirements Rule as to the alternative baseline year option in 40 C.F.R. 51.1110(b)).

--------

[2] Certain components of the SIP submissions that address these RACT requirements for the San Joaquin Valley are subject to a July 31, 2018 consent decree deadline for final EPA action. Revised Consent Decree filed January 19, 2017, in *Center for Biological Diversity v. EPA*, Case No. 4:16-cv-04092-PJH (N.D. Cal).

14.    The 2016 Ozone Plan contains a 2012 baseline emissions inventory, together with the State's justification for its selection of 2012 as the baseline, for purposes of satisfying the RFP requirements in CAA sections 172(c)(2) and 182(c)(2)(B), 42 U.S.C. 7502(c)(2) and 7511a(c)(2)(B). The Air Board and the District relied upon the provision concerning alternative baseline years in 40 C.F.R. 51.1110(b) in selecting a 2012 baseline year for the RFP plan. The 2016 Ozone Plan also contains a 2012 base year emissions inventory to address the emissions inventory requirement in CAA section 182(a)(1), 42 U.S.C. 7511a(a)(1); motor vehicle emissions budgets relied upon for transportation conformity determinations under CAA section 176(c)(2), 42 U.S.C. 7506(c)(2), and 40 CFR part 93, subpart A, which derive from the 2012 RFP baseline emissions inventory; and the State's proposed contingency measures under CAA sections 172(c)(9) and 182(c)(9), 42 U.S.C. 7502(c)(9) and 7511a(c)(9), which the 2016 Ozone Plan indicates will achieve emission reductions equal to approximately one year of RFP calculated from the 2012 baseline emissions inventory.

15.    On April 20, 2018, the South Coast Air Quality Management District submitted a petition for panel rehearing of the *South Coast* decision with respect to the alternative baseline year option in 40 C.F.R. 51.1110(b).[3] On April 23, 2018, the EPA submitted a petition for panel rehearing of other components of the *South Coast* decision.[4] The D.C. Circuit has not yet ruled on these petitions or issued the mandate in this case.

---

[3] Petition for Panel Rehearing of South Coast Air Quality Management District, filed April 20, 2018, in *South Coast Air Quality Management District v. U.S. EPA,* Case No. 15-1115 (D.C. Cir.) (Consolidated with 15-1123).

[4] Petition for Panel Rehearing by Respondents the United States Environmental Protection Agency, et al., filed April 23, 2018, in *Sierra Club, et al., v. U.S. EPA,* et al., Case No. 15-1123 (D.C. Cir.) (Consolidated with 15-1115).

## II.  THE EPA'S EXPECTED PROCESS FOR ACTION ON THE 2016 OZONE PLAN

### A. Sections of the 2016 Ozone Plan that are not affected by the *South Coast* decision

16.   The components of the 2016 Ozone Plan for which the EPA's review is not affected by the *South Coast* decision are those components that address the requirements for: (1) reasonably available control measures ("RACM") under CAA section 172(c)(1), 42 U.S.C. 7502(c)(1), and 40 C.F.R. 51.1112(c); (2) emissions statements under CAA section 182(a)(3), 42 U.S.C. 7511a(a)(3); (3) a 15 percent "rate of progress" demonstration under CAA section 182(b)(1), 42 U.S.C. 7511a(b)(1), and 40 C.F.R. 51.1110(a); (4) reasonably available control technology ("RACT") under CAA sections 182(b)(2) and 182(f), 42 U.S.C. 7511a(b)(2), 7511a(f), and 40 C.F.R. 51.1112(a), (b); (5) an enhanced monitoring program under CAA 182(c)(1), 42 U.S.C. 7511a(c)(1); (6) an attainment demonstration under CAA section 182(c)(2)(A), 42 U.S.C. 7511a(c)(2)(A), and 40 C.F.R. 51.1108; (7) an enhanced vehicle inspection and maintenance program under CAA section 182(c)(3), 42 U.S.C. 7511a(c)(3); (8) transportation control strategies and transportation control measures to offset growth in vehicles miles traveled under CAA sections 182(d)(1)(A), 42 U.S.C. 7511a(d)(1)(A); and (9) clean fuels or advanced control technology for certain types of boilers under CAA section 182(e)(3), 42 U.S.C. 7511a(e)(3).

17.   The EPA is currently developing the legal and technical analyses necessary to support a notice of proposed rulemaking on the components listed in Paragraph 16. Several steps must occur before the EPA can propose such an action. First, the staff level workgroup will evaluate each component of the 2016 Ozone Plan for compliance with applicable provisions of subparts 1 and 2 of part D, title I of the CAA, 42 U.S.C. 7501-7511a, and the EPA's interpretations of those requirements in the Plan Requirements Rule, 40 C.F.R. part 51 subpart

AA. The workgroup includes primarily Region 9 staff with a wide range of expertise, including engineers, program analysts, air quality modelers, and attorneys. The workgroup evaluations include technical review of air quality modeling analyses, review of state and district emissions inventory data, and review of state and district control measures for compliance with extreme area control standards.

18.    Next, the workgroup staff will develop recommendations on whether to approve or disapprove each component of the plan listed in Paragraph 16, and will prepare briefing papers explaining the legal, technical, and policy considerations supporting those recommendations.  Senior management will review these briefing papers and must ultimately sign off on the workgroup staff's proposed course of action.  This process is already underway and can reasonably be expected to continue for another 6 weeks, *i.e.,* until early July 2018.

19.    Concurrent with the briefings for senior management on issues requiring decisions that affect the proposed rulemaking, the staff workgroup is developing a written record to explain and support the proposed action. This includes the development of a notice of proposed rulemaking including a preamble that explains the legal, policy and technical bases for the proposed action. 5 U.S.C. 553 (requiring the notice of proposed rulemaking to include, *inter alia*, reference to the legal authority under which the rule is proposed and either the terms or substance of the proposed rule or a description of the subjects and issues involved). The EPA also develops for public comment detailed technical support documents that explain the various technical analyses supporting the proposed action. This process is also underway and can reasonably be expected to continue for another 6 weeks, *i.e.,* until early July 2018.

20.    Once the notice of proposed rulemaking is drafted, it must undergo review both by the workgroup staff and by several levels of EPA management in Region 9, in the Office of

General Counsel, and in the Office of Air and Radiation. This review process is expected to take 3 weeks, *i.e.,* until late July 2018.

21.    Once these internal reviews are complete, the Regional Administrator may sign the notice of proposed rulemaking. The EPA estimates that a notice of proposed rulemaking on those components of the 2016 Ozone Plan that are not affected by the *South Coast* decision could be signed by August 6, 2018.  Upon signature, the signed notice is transmitted to the Office of the Federal Register for publication pursuant to section 553 of the APA. 5 U.S.C. 553 (requiring that general notice of proposed rulemaking be published in the Federal Register). Publication of a notice of proposed rulemaking can take approximately 3-4 weeks from the signature date, depending on the length and complexity of the rulemaking and the workload of the Office of the Federal Register, and triggers the start of a public comment period.  The proposed rule could be published by early September 2018.

22.    The EPA is required to permit the public an opportunity to provide written comments on a notice of proposed rulemaking pursuant to APA section 553. EPA typically provides a public comment period of at least 30 days following notice of proposed rulemaking on a SIP submission and has often provided comment periods of 60 or 90 days, for more complex SIP actions. *Cf.* 42 U.S.C. 7410(h) (requiring EPA in promulgating any regulation under the CAA to "ensure a reasonable period for public participation of at least 30 days," with limited exceptions, consistent with the policy of the APA). The minimum 30-day public comment period would end by early October 2018.

23.    Once the comment period is closed, the EPA must review the comments received and consider whether those comments affect EPA's legal or technical analyses or the policy decisions made for purposes of developing the final rule.  While some comments that are

submitted early during the comment period can be reviewed during the comment period, most commenters make their submissions in the final few days of the comment period.  Accordingly, review of the public comments received on the notice of proposed rulemaking largely occurs after the close of the comment period.  The EPA typically receives detailed adverse comments on its proposed actions on SIP submissions addressing air pollution in the San Joaquin Valley because of its status as an extreme ozone nonattainment area.  During the EPA's review of these comments, the staff workgroup must identify issues that require decisions from senior management, prepare written briefing materials outlining the issues and options, and brief senior management to obtain the necessary decisions.  The EPA will also need to develop final rulemaking materials including a notice of final rulemaking, final regulatory text, and a response-to-comment document detailing the EPA's response to all significant comments received on the notice of proposed rulemaking, including responses to various policy, legal, and technical issues raised in the comments. This process can reasonably be expected to take 5-6 weeks, *i.e.,* until late November 2018.

24.     Once the notice of final rulemaking is drafted, it must undergo review both by the workgroup staff and by several levels of EPA management in Region 9, in the Office of General Counsel, and in the Office of Air and Radiation. This review process is expected to take 3 weeks, *i.e.,* until mid-December 2018.

25.     Following all of these steps, the Regional Administrator may sign the notice of final rulemaking. For those components of the 2016 Ozone Plan that are not affected by the *South Coast* decision, I believe that the EPA can take final action by Plaintiff's requested deadline, which is December 19, 2018.

**B. Sections of the 2016 Ozone Plan that are potentially affected by the *South Coast* decision**

26.     The EPA expects that its review of the following four components of the 2016 Ozone Plan will or may be affected by the *South Coast* decision: (1) the base year emissions inventory required by CAA section 182(a)(1), 42 U.S.C. 7511a(a)(1), and 40 C.F.R. 51.1115; (2) the "reasonable further progress" demonstration required by CAA sections 172(c)(2) and 182(c)(2)(B), 42 U.S.C. 7502(c)(2) and 7511a(c)(2)(B), and 40 C.F.R. 51.1110; (3) the contingency measures required by CAA sections 172(c)(9) and 182(c)(9), 42 U.S.C. 7502(c)(9) and 7511a(c)(9); and (4) the motor vehicle emission budgets relied upon for transportation conformity determinations under CAA section 176(c)(2), 42 U.S.C. 7506(c)(2), and 40 CFR part 93, subpart A.

27.     With respect to these four components, I believe that an additional 3 months is necessary to ensure that the EPA can adequately evaluate the impacts of the decision before taking final action on the plan. The *South Coast* decision raises many questions of first impression that require careful deliberation by the EPA. The answers to these questions implicate the CAA's highly complex statutory and regulatory framework and will impact the EPA's actions not only on the 2016 Ozone Plan but also on several other attainment plans for ozone nonattainment areas in California that are similarly affected by the *South Coast* decision.

28.     Specifically, the ozone attainment plans submitted for the following nonattainment areas in California contain alternative RFP baseline years *in lieu of* the 2011 baseline emissions inventory: (1) Ventura County, (2) San Diego, (3) the Los Angeles-South Coast air basin, (4) Coachella Valley, (5) West Mojave Desert, (6), Eastern Kern, (7) Imperial County, and (8) the Sacramento Metropolitan area.

29.     Ultimately, it is unclear whether and to what extent the *South Coast* decision requires the EPA to disapprove the portions of those plans that rely on alternative baseline years. The agency believes, however, that there may be colorable legal arguments that support approval notwithstanding *South Coast.* The EPA is currently evaluating these arguments.

30.     For the components of the 2016 Ozone Plan that are potentially affected by *South Coast*, I believe that 3 additional months beyond December 19, 2018 are necessary for the following reasons.

31.     First, the workgroup staff's work to review the plan, prepare briefing materials, and draft record documents to support a proposed rulemaking, as described in paragraphs 17 through 19 above, is reasonably expected to continue for at least 3 additional weeks beyond the time necessary to carry out these tasks with respect to the unaffected components of the 2016 Ozone Plan (*i.e.,* until late July 2018).  This is so because for each of the four components listed in Paragraph 26, workgroup staff anticipate developing alternative options for approval or disapproval.  Each of those alternative options will need to be supported by legal, technical, and policy rationales, which will need to be reviewed by management.  Given the novelty and significance of these issues, that review will likely need to be elevated to the level of the Assistant Administrator for the Office of Air Radiation.  Moreover, the analysis and briefing regarding the four components of the 2016 Ozone Plan that are potentially impacted by *South Coast* must be conducted by the same staff both in Region 9 and at EPA headquarters offices who will analyze and brief management on the nine components of the 2016 Ozone Plan that are unaffected by *South Coast.*

32.     Second, given the novel and complex legal questions raised by the *South Coast* decision, the internal review process for a notice of proposed rulemaking on these components of

the plan, as described in paragraph 20 above, is reasonably expected to take 3 additional weeks beyond the time necessary to carry out these reviews with respect to the unaffected components of the plan (*i.e.,* until mid-September 2018). The EPA estimates that a notice of proposed rulemaking on the potentially affected plan components could be signed by September 17, 2018 and published by mid-October 2018.

33.     Third, given the likelihood that the EPA will receive significant public comments on the EPA's proposals, the work involved in reviewing comments received, considering their impacts on the EPA's analyses or policy decisions, briefing senior management, and developing final rulemaking materials including responses to the comments, as described in paragraph 22 above, is reasonably expected to take at least 3 additional weeks beyond the time necessary to carry out these tasks with respect to the unaffected components of the plan (*i.e.,* until late January 2019).

34.     Finally, the internal review process for a notice of final rulemaking on these components of the plan, as described in paragraph 23 above, is reasonably expected to take 3 additional weeks beyond the time necessary to carry out these reviews with respect to the unaffected components of the plan (*i.e.,* until mid-March 2019).

35.     Following all of these steps, the Regional Administrator may sign the notice of final rulemaking. For those components of the 2016 Ozone Plan that are or may be affected by the *South Coast* decision, I believe that March 19, 2019 is the most expeditious date by which the EPA can take a final action that reflects the agency's full consideration of the impacts of the *South Coast* decision. If, however, the D.C. Circuit issues a decision on rehearing in *South Coast* prior to this date that requires a significant change in the EPA's analyses or any proposed actions

pertaining to the 2016 Ozone Plan, the EPA may seek leave from the court for additional time beyond March 19, 2019, for final action on this plan.

36.    EPA Region 9 has a particularly heavy workload for SIP actions, which will compete for staff and management time while these processes on the 2016 Ozone Plan continue. As of May 1, 2018, Region 9 has 253 SIP submissions pending before the agency, 220 of which are subject to statutory deadlines under CAA section 110(k), 42 U.S.C. 7410(k), for final EPA action before the end of 2018. During the 2011-2017 period, Region 9 took final action on an average of 100 SIP submissions each year and received an average of 110 new SIP submissions each year. For the 2008 ozone NAAQS alone, our office has received 10 attainment plan submissions, 9 of which rely on an alternative baseline year for the RFP plan. Six of these submitted ozone attainment plans are subject to statutory deadlines under CAA section 110(k), 42 U.S.C. 7410(k), for final EPA action before the end of 2018.

37.    The schedule set forth herein assumes that EPA Region 9 prioritizes action on the 2016 Ozone Plan above its other competing obligations.

## III.    THE EPA'S REQUESTED SCHEDULE FOR FINAL ACTION ON THE 2016 OZONE PLAN

38.    I believe that the EPA can take final action by Plaintiff's requested deadline of December 19, 2018, on those components of the 2016 Ozone Plan for which the EPA's review is not affected by the *SCAQMD* decision, as set forth in paragraph 16. For those components of the 2016 Ozone Plan that are or may be affected by the *South Coast* decision, set forth in Paragraph 26, I believe that March 19, 2019 is the most expeditious date by which the EPA can take final action, provided a decision on rehearing by the D.C. Circuit prior to that date does not compel a significant change in the EPA's analyses or any actions proposed. Any shorter timeframe for the EPA's action on these elements of the plan would not provide the agency with the time necessary

1  to fully evaluate the impacts of the *South Coast* decision and would result in a rushed process

2  that could negatively impact the EPA's actions not only on the 2016 Ozone Plan but also on

3  other ozone attainment plans impacted by *South Coast.*

4

5

6          I declare under penalty of perjury that the foregoing is true and correct.

7

8  Executed this 24th day of May, 2018.

9

10                                          Elizabeth J. Adams
                                            Acting Director
11                                          Air Division, Region 9
12                                          United States Environmental Protection Agency

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28